# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JASON LEE VEGH,

        Defendant-Appellant.

UNPUBLISHED
January 11, 2018

No. 333242
Oakland Circuit Court
LC No. 2015-255036-FC

Before: METER, P.J., and SAWYER and SHAPIRO, JJ.

PER CURIAM.

Defendant appeals as of right his jury convictions of two counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(a) & (2)(b). The trial court sentenced him as a third-offense habitual offender, MCL 769.11, to 30 to 60 years in prison for each conviction, to be served concurrently. We affirm.

## I. FACTS AND PROCEEDINGS

Defendant was charged with multiple counts of criminal sexual conduct (CSC) in two different cases. In the first case, LC No. 2015-254514-FH, defendant was charged with one count of third-degree criminal sexual conduct (CSC-III), MCL 750.520d(1)(b), for an offense committed against MO, and three counts of fourth-degree criminal sexual conduct (CSC-IV), MCL 750.520e(1)(b), for offenses committed against MJ. Complainants MO and MJ were non-relative teenage girls who alleged that defendant sexually assaulted them while they were staying in defendant's home. In the second case, LC No. 2015-255036-FC, defendant was charged with two counts of CSC-I for offenses committed against his stepdaughter, CS. Defendant stipulated to the consolidation of the two cases for trial.

At trial, CS testified that defendant sexually assaulted her by engaging in penile-vaginal penetration on two separate occasions. The assaults occurred at the family apartment in Holly, where CS lived with defendant, her mother LE, and others. According to CS, no one else was present in the apartment at the time of the assaults.

MO and MJ were teenagers who sometimes stayed at defendant and LE's home. MJ testified that on three separate occasions, she awoke from her sleep to find defendant touching her vaginal area and masturbating. She stated that these assaults occurred while defendant, LE, and others were living in a trailer home in Oakland County. MO testified that she was sleeping

-1-

on a couch in the living room of the trailer home on a night in July 2014, after a memorial service for LE's sister. She claimed that she awoke to find defendant reaching into her shorts and touching her vagina and that he digitally penetrated her vagina.

The jury acquitted defendant of all charges involving MO and MJ, but convicted him of the two counts of CSC-I involving CS.

## II. CONSOLIDATION

Defendant first argues that the trial court erred by consolidating the two CSC cases for trial.[1] However, because defense counsel stipulated to having the cases consolidated, this issue is waived. "A stipulation constitutes a waiver of any alleged error, so there is no error for us to review." *People v Eisen*, 296 Mich App 326, 328-329; 820 NW2d 229 (2012). Defendant further argues, however, that defense counsel was ineffective for stipulating to the consolidation. We disagree.

Defendant raised this claim of ineffective assistance of counsel in a motion for a new trial, which the trial court denied. "Whether defense counsel performed ineffectively is a mixed question of law and fact; this Court reviews for clear error the trial court's findings of fact and reviews de novo questions of constitutional law." *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). "Effective assistance of counsel is presumed and defendant bears the burden of proving otherwise." *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008). "To demonstrate ineffective assistance of counsel, a defendant must show that his or her attorney's performance fell below an objective standard of reasonableness under prevailing professional norms and that this performance caused him or her prejudice." *People v Nix*, 301 Mich App 195, 207; 836 NW2d 224 (2013). "Defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy." *Petri*, 279 Mich App at 411. "This Court will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight." *Id*. (quotation marks and citation omitted).

We begin by analyzing whether joinder of the two cases was permissible under the court rules. MCR 6.120 provides, in pertinent part:

> **(B) Postcharging Permissive Joinder or Severance.** On its own initiative, the motion of a party, or the stipulation of all parties, except as provided in subrule (C), the court may join offenses charged in two or more informations or indictments against a single defendant, or sever offenses charged in a single information or indictment against a single defendant, when appropriate to

---

[1] On appeal, defendant repeatedly refers to the improper joinder of "three" CSC cases, but he was charged with CSC in only two cases, one involving two complainants (MO and MJ), and the other involving complainant CS. Although the consolidation order refers to a third case, that case involved a charge of assaulting or resisting a police officer, MCL 750.81d(1), which was resolved before trial. The case proceeded to trial only on the charges in the two CSC cases.

promote fairness to the parties and a fair determination of the defendant's guilt or innocence of each offense.

> (1) Joinder is appropriate if the offenses are related. For purposes of this rule, offenses are related if they are based on

>> (a) the same conduct or transaction, or

>> (b) a series of connected acts, or

>> (c) a series of acts constituting parts of a single scheme or plan.

> (2) Other relevant factors include the timeliness of the motion, the drain on the parties' resources, the potential for confusion or prejudice stemming from either the number of charges or the complexity or nature of the evidence, the potential for harassment, the convenience of witnesses, and the parties' readiness for trial.

> (3) If the court acts on its own initiative, it must provide the parties an opportunity to be heard.

> **(C) Right of Severance; Unrelated Offenses.** On the defendant's motion, the court must sever for separate trials offenses that are not related as defined in subrule (B)(1).

We disagree with defendant's argument that the charged sexual assaults of CS, MO, and MJ were not related under MCR 6.120(B)(1).

In *People v Gaines*, 306 Mich App 289, 292-293; 856 NW2d 222 (2014), the defendant was charged with sexual offenses against three minors, CP, AW, and MM. The three cases were consolidated for trial. *Id*. at 304. The defendant was convicted of (1) accosting, enticing, or soliciting a child for immoral purposes, MCL 750.145a, with respect to CP and MM, (2) CSC-III with respect to AW, and (3) three counts of CSC-III with respect to MM. *Gaines*, 306 Mich App at 292-293. This Court rejected the defendant's argument that the trial court abused its discretion in consolidating the three cases, explaining:

> The evidence demonstrated that defendant engaged in ongoing acts related to his scheme of preying upon young, teenage girls from his high school. In each case, defendant used text messages to communicate with the victims and encouraged them to keep their communications secret. In at least two cases, defendant requested naked photographs from the victims and, if they refused, threatened to cut off ties with them. He also used his parents' basement to isolate two of the young girls and sexually penetrate them.

> The facts were not complex and presented little potential for confusion. Because defendant's actions against each victim were admissible in each case pursuant to MCL 768.27a, each victim would have been required to testify in each trial if the cases were tried separately. Joinder offered convenience to the victims,

who had already suffered harassment in their communities as a result of these cases. [*Id*. at 305.]

The circumstances pertaining to defendant's CSC charges against the complainants in this case are analogous to the circumstances of *Gaines*. The evidence showed that defendant engaged in ongoing predatory acts against teenage or preteen girls who resided or temporarily stayed in his household. CS was his stepdaughter; MO and MJ were transient residents in the de facto foster home operated by defendant and LE. The chaotic environment in the household, combined with LE's extended absence in 2012 and her incapacitating illness in 2014, gave defendant opportunities to exploit the girls. All three girls were vulnerable because of their young age and personal circumstances, and because LE was seemingly oblivious to what was occurring. CS was vulnerable because defendant was her stepfather and her mother failed to intervene to protect CS. MO and MJ were vulnerable because they lacked private sleeping accommodations and because they were minors with inadequate support from their families. The facts and circumstances support a finding that permissive joinder would have been appropriate under MCR 6.120(B)(1)(c), because defendant was engaged in a series of acts constituting parts of a single scheme or plan to sexually assault young girls staying in his home. Additionally, the factor of convenience for the witnesses supported consolidation. MCR 6.120(B)(2). Defendant had no right of severance under MCR 6.120(C).

Defendant argues that he was unfairly prejudiced by the cumulative effect of three complainants testifying about his sexual assaults. However, MCL 768.27a provides that "in a criminal case in which the defendant is accused of committing a listed offense against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant." "Listed offense" is defined to include the offenses against CS, MO, and MJ. MCL 768.27a(2)(a); MCL 28.722(j), (u)(*x*), & (w)(*iv*). "Minor" is defined as "an individual less than 18 years of age." MCL 768.27a(2)(b). CS was a minor at the time of the offenses against her. In addition, MO's testimony indicated that she was under 18 years old when defendant allegedly assaulted her on the night of the memorial service, and a reasonable reading of MJ's testimony is that she was 17 years old at the time of the alleged sexual assaults against her. Thus, it appears from the record that the testimony of MO and MJ would have been admissible at a separate trial involving the charges related to CS.

Defendant also complains that the testimony of the three complainants caused confusion for the jury. There is no basis for this argument. None of the complainants testified regarding any complicated circumstances that were likely to cause difficulties in considering or understanding their testimony. Moreover, the fact that defendant was acquitted of the charges pertaining to MO and MJ undermines his claim that the jury was confused by having the cases consolidated.

Defendant has failed to overcome the presumption that defense counsel had sound reasons for stipulating to the consolidation of the cases. Counsel may well have recognized that permissive joinder of the cases was appropriate under MCR 6.120(B)(1)(c) and that defendant had no right of severance under MCR 6.120(C). In addition, counsel reasonably may have believed that separate trials would be of little benefit to defendant, given that the testimony of each complainant would likely be admissible under MCL 768.27a at separate trials, and that

separate trials would provide the prosecution with the opportunity to better respond at a second trial to any defense strategy used at a first trial. The record does not support defendant's claim that defense counsel committed an objectively unreasonable error by stipulating to having the cases consolidated, and there is no reasonable probability that the outcome would have differed in the absence of the stipulation. *Nix*, 301 Mich App at 207.

## III. MISTRIAL

Defendant next argues that the trial court erred in denying his motion for a mistrial after a prosecution witness commented that defendant had been "locked up." We review a trial court's decision denying a motion for a mistrial for an abuse of discretion. *People v Schaw*, 288 Mich App 231, 236; 791 NW2d 743 (2010). "This Court will find an abuse of discretion if the trial court chose an outcome that is outside the range of principled outcomes." *Id*.

"A trial court should grant a mistrial only for an irregularity that is prejudicial to the rights of the defendant and impairs his ability to get a fair trial." *Id*. (quotation marks and citations omitted). The witness's reference to an occasion when defendant was "locked up" was offered in response to defense counsel's question asking the witness where the family lived when the witness was living with defendant and LE. The witness responded, "It started off in the Holly Village Trailer Park behind McDonald's, that's where they met. And then he got locked up for—." The witness's comment that defendant "got locked up" was nonresponsive testimony. Generally, "unresponsive testimony by a prosecution witness does not justify a mistrial unless the prosecutor knew in advance that the witness would give the unresponsive testimony or the prosecutor conspired with or encouraged the witness to give that testimony." *People v Jackson (On Reconsideration)*, 313 Mich App 409, 427; 884 NW2d 297 (2015) (quotation marks and citation omitted). In this case, the response was given during questioning by defense counsel, and defendant acknowledges that the prosecutor did not contribute to the response because she had advised witnesses before their testimony to avoid any reference to defendant's prior incarceration.

Immediately after the objectionable remark, the trial court ordered that the witness's comment be stricken and instructed the jury that the remark "should not be considered in any manner." The court gave a similar instruction as part of its final charge to the jury. "Jurors are presumed to follow their instructions, and it is presumed that instructions cure most errors." *People v Mahone*, 294 Mich App 208, 212; 816 NW2d 436 (2011). Considering that the witness's remark was brief and isolated, and did not reveal any reason for why defendant was "locked up," the trial court's instruction was sufficient to cure any prejudice to defendant. Indeed, although defendant complains that the witness's comment prejudiced him in the eyes of the jury by portraying him as a person with a bad character and propensity for criminal conduct, the jury acquitted defendant of the charges related to MO and MJ, thereby suggesting that it was not unduly influenced by the witness's isolated remark. The trial court did not abuse its discretion in denying defendant's motion for a mistrial.

## IV. GREAT WEIGHT OF THE EVIDENCE

Defendant next argues that the trial court erred in denying his motion for a new trial on the ground that the jury's verdict was against the great weight of the evidence. We review for an

abuse of discretion a trial court's decision denying a motion for a new trial. *People v McCray*, 245 Mich App 631, 637; 630 NW2d 633 (2001).

A new trial may be granted if a jury's verdict is against the great weight of the evidence. *People v Herbert*, 444 Mich 466, 475; 511 NW2d 654 (1993), overruled in part on other grounds by *People v Lemmon*, 456 Mich 625, 627; 576 NW2d 129 (1998). The test for whether a verdict is against the great weight of the evidence is "whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *McCray*, 245 Mich App at 637.

In support of his argument, defendant refers to numerous alleged discrepancies regarding MO's testimony. However, the jury convicted defendant only of the charges relating to CS, which did not rest on MO's credibility. Defendant offers no explanation for why credibility questions related to MO's testimony would affect the weight of the evidence pertaining to the separate charges involving CS. Defendant also cites alleged discrepancies regarding CS's testimony. Generally, however, "conflicting testimony or a question as to the credibility of a witness are not sufficient grounds for granting a new trial . . . ." *People v Bosca*, 310 Mich App 1, 13; 871 NW2d 307 (2015), application for leave held in abeyance 872 NW2d 492 (2015) (quotation marks and citations omitted). Exceptional circumstances are required for a new trial to be granted based on a witness's credibility. *Id*. Exceptional circumstances involve testimony that contradicts "indisputable physical facts or laws," that is "patently incredible or def[ies] physical realities," that is "so inherently implausible that it could not be believed by a reasonable juror," or that was "seriously impeached in a case that was marked by uncertainties and discrepancies." *Id*. (quotation marks and citations omitted); see also *People v Galloway*, 307 Mich App 151, 167; 858 NW2d 520 (2014), rev'd in part on other grounds 498 Mich 902 (2015). Defendant's challenges to CS's credibility do not involve such circumstances. We note, contrary to defendant's suggestion, that the timing of LE's call to the police on October 22, 2014, while she was separating from defendant, did not make the accusations against defendant patently incredible. LE's testimony provided the jury with ample evidence to question her own credibility and motives, but in the end it was the complainants' credibility, not LE's credibility and motives, that was the central issue in the cases. Defendant complains about the lack of corroborating evidence supporting CS's allegations, but it is well-settled that "[t]he testimony of a [CSC] victim need not be corroborated[.]" MCL 750.520h. Because the evidence did not preponderate so heavily against the jury's verdict that it would be a miscarriage of justice to allow the verdict to stand, the trial court did not abuse its discretion in denying defendant's motion for a new trial.

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant raises several additional claims of ineffective assistance of counsel in both his principal brief on appeal and in a pro se supplemental brief, filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4. Defendant raised many of these claims in his motion for a new trial, but because the trial court did not conduct a *Ginther*[2] hearing, review of

---

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

the claims is limited to errors apparent from the record. *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009).

## A. FACEBOOK MESSAGES

Defendant argues that defense counsel was ineffective because she did not obtain Facebook messages exchanged between MO and MJ "to verify their contents compared to the testimony of the witnesses at trial to see if there were any inconsistencies or collusion between the two witnesses." The record does not support this statement. The record discloses that defense counsel received the Facebook messages on the first day of trial. There is no indication in the record that defense counsel was at fault for the late production or that she could have done anything to obtain them sooner. In any event, defense counsel's cross-examination of MO and MJ reflected her familiarity with the messages. Defendant does not identify anything in the messages that defense counsel did not use that might have led to a more favorable outcome. Indeed, defendant received a favorable outcome because the jury acquitted him of the charges involving MO and MJ.

Defendant argues that defense counsel should have asked LE about CS's Facebook messages that contained favorable comments about defendant. Defense counsel did, in fact, elicit LE's testimony that CS sent messages inquiring about defendant and asking LE to tell defendant that CS loved him and missed him. Counsel elicited from LE that CS's messages about defendant were "always good." Defendant complains that defense counsel failed to introduce a 2012 Father's Day message that CS sent to defendant via Facebook, or to question LE about it. However, as indicated, defense counsel elicited other evidence that CS inquired about defendant after the alleged sexual assault and commented that she loved him and missed him. There is no reasonable probability that introduction of this additional evidence of CS's perfunctory acknowledgment of her stepfather on a holiday posting would have affected the outcome of the trial.

## B. FAILURE TO INVESTIGATE OR CALL WITNESSES

In both defendant's principal brief and his Standard 4 brief, defendant names several persons who might have given testimony favorable to his defense if trial counsel had investigated them and called them as witnesses. "Decisions regarding whether to call or question witnesses are presumed to be matters of trial strategy." *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012). "[T]he failure to call witnesses only constitutes ineffective assistance of counsel if it deprives the defendant of a substantial defense." *Id*. (quotation marks and citation omitted). "A substantial defense is one that might have made a difference in the outcome of the trial." *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009) (quotation marks and citation omitted).

Defendant argues that the uncalled witnesses might have supported his defense that CS was coached and was fabricating the allegations against him. He claims they could have revealed whether CS's behavior and attitude toward him were inconsistent with her allegations of sexual assault, and they could have supported his theory that LE and the other complainants were involved in a "conspiracy" to fabricate allegations against him in retaliation for his decision to end his marriage to LE. In his Standard 4 brief, defendant also states that his father could

have provided testimony that he and defendant were employed at an overnight job during the month that LE was out-of-state. Defendant's arguments are based on speculation concerning what testimony these persons *might* have offered. He has not provided any witness affidavits or other evidence showing what testimony the witnesses actually *would* have offered. Absent such a showing, he cannot establish that failure to call the witnesses was objectively unreasonable, or deprived him of a substantial defense. *Id.*; *Nix*, 301 Mich App at 207; see also *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001) (a defendant bears the burden of establishing the factual predicate for a claim of ineffective assistance of counsel).

Defendant also complains that defense counsel was ineffective for failing to investigate and obtain LE's records regarding her history with Children's Protective Services (CPS). The record does not factually support this claim. On the first day of trial, the prosecutor indicated that she had received some CPS reports and would provide copies to defense counsel. There is no indication that defense counsel was at fault for failing to obtain the records earlier. More significantly, there is no indication that these records held any exculpatory value. Defendant does not identify any such value on appeal. Nor does defendant provide evidence, such as the actual work records, regarding how an "investigat[ion] [into defendant's] employment history where he was working nights" would have aided his defense.[3] *Id.*

### C. EXPERT WITNESS

Defendant argues that defense counsel was ineffective for not requesting appointment of an expert witness who could have testified regarding "the lack of change in [CS's] behavior, explain[ed] why [CS] did not report these allegations to anyone until months later, and explain[ed] the effect of someone her age being coached during an interview by the school counsel and forensic interviewer." Defendant offers no factual support for his claim that a witness, qualified as an expert in accordance with MRE 702, could have provided a substantial defense. He does not cite any published or scholarly literature correlating absence of abnormal behavior with absence of sexual assault, or supporting his supposition that CS was coached to fabricate allegations. Further, he has not provided an offer of proof showing what testimony an expert would have provided. Thus, he has not demonstrated that he was prejudiced by counsel's failure to request or call an expert witness.

In his Standard 4 brief, defendant further argues that an expert could have testified that an adolescent can be pressured into giving a false incriminating statement. Defendant cites CS's testimony that when her brother contacted her about defendant, she initially responded by stating that she did not want to become involved. Defendant contends that her brother then "pressured" CS despite her unwillingness. There is no reason to believe that an expert was necessary to make this argument. Defendant was free to argue that CS's allegations should not be believed because others had pressured her to make false allegations. Defendant fails to explain why specialized knowledge was necessary to make this argument, and without an offer of proof showing what testimony an expert would have provided, defendant is unable to demonstrate that he was prejudiced by the failure to request or call an expert.

---

[3] We note that CS did not specify exact dates for the offenses.

### D. FORENSIC INTERVIEW

In his Standard 4 brief, defendant complains that defense counsel failed to share with him the video recording of CS's forensic interview. Defendant does not dispute that defense counsel obtained and viewed the video. Defendant asserts that the video might have revealed statements inconsistent with CS's trial testimony, but offers no reason why defense counsel could not have determined that herself. Defendant otherwise fails to identify any exculpatory value of the video. Defendant has not met his burden of establishing a reasonable probability that the outcome of trial would have been different if counsel had shown him the video.

### E. FOUNDATION FOR THE DEFENSE

In his Standard 4 brief, defendant argues that defense counsel was ineffective for failing to establish a foundation for a defense based on discrepancies in the evidence and testimony, the lack of physical and corroborating evidence, the implausibility of testimony, problems with the police investigation, and witnesses' alleged motives to fabricate accusations and retaliate against defendant for his decision to end his marriage. There is no merit to this argument. The record discloses that defense counsel seized opportunities to explore and address these areas in his cross-examination of witnesses, presentation of evidence, and arguments at trial. Indeed, counsel was successful in obtaining defendant's acquittal of the charges pertaining to MO and MJ. Thus, the record does not support this claim.

### F. IMPEACHMENT OF WITNESSES

In his Standard 4 brief, defendant argues that defense counsel was ineffective for failing to adequately impeach witnesses. Decisions regarding how to cross-examine and impeach witnesses are matters of trial strategy. *In re Ayres*, 239 Mich App 8, 23; 608 NW2d 132 (1999); *People v McFadden*, 159 Mich App 796, 800; 407 NW2d 78 (1987). The record discloses that defense counsel vigorously attacked the prosecution witnesses' credibility. Defendant complains that counsel failed to seize upon additional impeachment opportunities, but where the record discloses that counsel made adequate efforts to impeach a witness at trial, failure to impeach the witness on additional contradictory aspects of the witness's prior statements or testimony does not constitute ineffective assistance of counsel. *Id*. In this case, considering the scope of defense counsel's impeachment efforts at trial, defendant has not overcome the presumption of sound trial strategy or demonstrated a reasonable probability that additional impeachment efforts would have produced a different result at trial.

Affirmed.

/s/ Patrick M. Meter
/s/ David H. Sawyer
/s/ Douglas B. Shapiro

-9-